25CA0494 Scott v Denver Water 08-06-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 25CA0494
City and County of Denver District Court No. 24CV30503
Honorable Mark T. Bailey, Judge

Joseph A. Scott,

Plaintiff-Appellee,

v.

Denver Water and Adewale Williams,

Defendants-Appellants.

ORDER REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division V
Opinion by JUDGE LIPINSKY
Yun and Schutz, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced August 6, 2026

Dormer Harpring, LLC, Timothy Garvey, Denver, Colorado, for Plaintiff-Appellee

Nathan Dumm & Mayer P.C., Timothy R. Fiene, Daniel A. Jacobs, Denver, Colorado, for Defendants-Appellants

Singleton Schreiber P.C., Nelson Boyle, Denver, Colorado; Ramos Injury Law, Spencer Aitken, Northglenn, Colorado, for Amicus Curiae The Colorado Trial Lawyers Association

¶ 1     The Colorado Supreme Court held for the first time last year that courts must apply a likelihood standard when evaluating disputed jurisdictional facts under the Colorado Governmental Immunity Act (CGIA), §§ 24-10-101 to -120, C.R.S. 2025.  *See Jefferson County v. Dozier*, 2025 CO 36, ¶¶ 2, 21, 24, 570 P.3d 482, 485, 488-89.  Under the likelihood standard, a plaintiff's claims are barred under the CGIA — and the court lacks subject matter jurisdiction over them — unless the plaintiff "'show[s] a likelihood,' or 'a reasonable probability[,] of success on the merits.'"  *Id.* at ¶ 21, 570 P.3d at 488 (quoting *Dallman v. Ritter*, 225 P.3d 610, 621 (Colo. 2010)).

¶ 2     In *Dozier*, the supreme court applied the likelihood standard in a case involving the CGIA's "dangerous condition" exception.  *See id.* at ¶¶ 17, 38, 570 P.3d at 487, 491; § 24-10-106(1)(c), C.R.S. 2025.  In this case, we consider the applicability of the likelihood standard in a case involving the CGIA's "operation of a motor vehicle" exception.  § 24-10-106(1)(a).

¶ 3     We hold that, in this case, the district court erred by not applying the likelihood standard.  (We note that the supreme court announced *Dozier* after the district court decided the CGIA waiver

1

issue in this case; we do not fault the district court for not anticipating *Dozier*'s ruling.)

¶ 4    We cannot determine from the record whether the court would have reached the same result had it applied the controlling legal standard. For this reason, we reverse the district court's order denying the defendants' motion to dismiss and remand the case to the court to reconsider the CGIA waiver issue under the likelihood standard.

## I.    Background

¶ 5    Joseph A. Scott brought negligence and negligence per se claims against Denver Water, a Colorado municipal corporation, and its employee Adewale Williams (jointly, the Denver Defendants) after Scott was injured when he abruptly stopped his bicycle to avoid what he perceived to be an imminent collision with Williams's Denver Water truck. He also asserted a respondeat superior claim against Denver Water for Williams's alleged negligence.

¶ 6    In his complaint, Scott alleged that Williams parked the truck "heading south in the northbound lane of the 800 block of North Ogden Street" in Denver. According to Scott, at the time of the accident, he was "commuting by bicycle and heading north in the

2

800 block of Ogden Street." He alleged that Williams was "operating" the truck, for purposes of section 24-10-106(1)(a), when Williams turned off the truck's overhead warning lights (emergency flashers) while the truck was illegally double-parked, facing oncoming traffic on Ogden Street, with the engine running. According to Scott's complaint, Williams turned off the flashers as Scott approached, leading Scott to believe that the truck was about to collide with his bicycle and forcing him "to take evasive actions." He abruptly braked, which caused him to "flip over his handlebars" and suffer "a broken jaw and other injuries, harms, and losses."

¶ 7     The Denver Defendants filed a C.R.C.P. 12(b)(1) motion to dismiss Scott's complaint for lack of subject matter jurisdiction under the CGIA, which grants governmental entities immunity from tort liability unless a statutory waiver applies. § 24-10-106(1). The Denver Defendants argued that the statutory waiver for cases arising from the "operation of a motor vehicle" did not apply because "turning off [emergency flashers] in a parked, non-moving vehicle" does not constitute "operation" of a motor vehicle and that Scott's injuries did not "result[] from" Williams's actions. § 24-10-106(1)(a).

¶ 8     Because CGIA immunity implicates a court's subject matter jurisdiction, courts must resolve all immunity issues before trial. *See Finnie v. Jefferson Cnty. Sch. Dist. R-1*, 79 P.3d 1253, 1258-59 (Colo. 2003). Accordingly, in this case, the district court appropriately conducted an evidentiary hearing under *Trinity Broadcasting of Denver, Inc. v. City of Westminster*, 848 P.2d 916 (Colo. 1993), to resolve disputed jurisdictional facts.

¶ 9     At the *Trinity* hearing, Scott testified that he abruptly braked for three reasons:

(1) Williams's truck was parked, facing south, in the northbound lane — the same lane in which Scott was riding his bicycle toward the truck.

(2) He perceived that the truck was "mov[ing] forward a little bit."

(3) He saw the truck's emergency flashers turn off as he was preparing to pass it.

Scott and the Denver Defendants presented conflicting evidence on whether (1) the truck's engine was running at the time of the accident; (2) the truck moved as Scott approached it; and (3) the emergency flashers turned off before or after the accident.

4

¶ 10    Following the presentation of evidence, the district court ruled from the bench.  The court said it was affording Scott "all reasonable inferences from the record" and that it was "construing the waiver provision deferentially in favor of" Scott.

¶ 11    Apparently applying this standard, the district court made the following findings:

- At the time of the accident, Williams was working within the course of his employment for Denver Water, delivering water pitchers as part of Denver Water's lead abatement program.

- Williams parked his Denver Water truck in the northbound lane of Ogden Street, facing the wrong direction.

- While delivering water pitchers, Williams left the key in the truck's ignition and the emergency flashers on.

- Scott approached the truck while riding his bicycle northward in the northbound lane of Ogden Street.

- Scott had to merge into the southbound lane — against oncoming traffic — to get around the truck.

- Williams was seated in the truck as Scott approached.

- Williams turned off the truck's emergency flashers "right around the time" of the accident.

- Scott perceived that Williams was about to move the truck into the southbound lane and start driving south.

¶ 12     But the district court said that it was unable to make a finding as to whether the truck was moving at the time of the accident. In addition, the court did not make findings regarding whether the truck's engine was running at the time of the accident and whether the truck's emergency flashers turned off before or after the accident.

¶ 13     The district court made two alternative rulings. First, the court said that "the act of parking on the wrong side of the road, in the context of the facts of this case, is operation of the motor vehicle for purposes of waiver of immunity." The court said that "it would be a different question if [Williams] had parked the [truck] for the night somewhere and then gone home," but that "here the parking of the [truck] was very much in the course of his operation of the vehicle, making the deliveries he was making."

¶ 14     The court determined that there was a "minimal causal connection" between Williams's decision to park the truck in the

wrong lane and the accident. In so ruling, the district court said it was not relying on whether the engine was running or the truck was moving — factual disputes that, as noted above, the court did not resolve — because those facts "simply [did not] matter for purposes of ruling on this motion." The court premised its ruling on the first alternative by saying, "[N]egligent stopping of a vehicle in an unsafe place is operation."

¶ 15    Second, the district court alternatively concluded that, "[e]ven if [it was] wrong" that parking in the wrong lane constituted operation of the truck, Denver Water still waived immunity under the CGIA. The court reasoned that Scott's testimony that "he saw the truck's flashers turn off," combined with the "other evidence" presented at the hearing, "reasonably support[ed]" the conclusion that Williams "did something that constitute[d] operation of the truck in the moments before" the accident. It found that "the flashing of the lights . . . happened right around the time that [Scott] crashed," which was undisputed. Williams said he turned off the emergency flashers *after* the accident, while Scott said he saw them turn off immediately *before* the accident.

¶ 16    The district court said that, after "construing the [CGIA] waiver provisions deferentially in favor of [Scott], and granting [him] all reasonable inferences from the evidence," Scott "met his burden to establish the [c]ourt's subject matter jurisdiction."

¶ 17    The district court concluded that, under either alternative analysis, Denver Water waived CGIA immunity under section 24-10-106(1)(a) and denied the Denver Defendants' dismissal motion.

¶ 18    The Denver Defendants appealed the district court's order.

## II.    Analysis

¶ 19    The Denver Defendants contend that (1) the district court applied an incorrect legal standard when it determined that Scott met his burden to establish subject matter jurisdiction; (2) the district court erred by concluding that the manner in which a vehicle is parked can constitute "operation of a motor vehicle" under section 24-10-106(1)(a); and (3) the court erred by finding a minimal causal connection between Scott's injuries and Williams's conduct.  Because we agree that the district court applied the incorrect standard, we reverse the court's order denying the Denver

Defendants' dismissal motion and remand the case for findings and conclusions consistent with Dozier's likelihood standard.

### A. The Likelihood Standard Applies to Our Jurisdictional Analysis

#### 1. Standard of Review

¶ 20    "[C]ourts should resolve [CGIA] issues through motions to dismiss for lack of subject matter jurisdiction pursuant to C.R.C.P. 12(b)(1)." *Finnie,* 79 P.3d at 1259. "Under this standard, the plaintiff bears 'the burden of proving jurisdictional facts adequate to support subject matter jurisdiction.'" *Dozier,* ¶ 11, 570 P.3d at 486 (quoting *City & County of Denver v. Crandall,* 161 P.3d 627, 632 (Colo. 2007)).

¶ 21    "[A] district court's resolution of a Rule 12(b)(1) motion to dismiss presents a mixed question of fact and law." *Id.* at ¶ 13, 570 P.3d at 487. "We defer to the district court's factual findings unless they're clearly erroneous, and we review the district court's conclusion regarding CGIA immunity de novo." *Id.* We also review de novo "whether the court properly . . . applied the correct legal standard." *Smith v. City & County of Denver,* 2025 COA 70, ¶ 35, 577 P.3d 477, 486.

## 2.    Waivers of Immunity Under the CGIA

¶ 22    Under the CGIA, public entities are "immune from liability in all claims for injury that lie in tort or could lie in tort." § 24-10-106(1). The purpose of sovereign immunity under the CGIA is to "protect the government from 'excessive fiscal burdens,' which include not only the costs of judgments against the government but the costs of unnecessary litigation as well." *Grand Junction Peace Officers' Ass'n v. City of Grand Junction*, 2024 COA 89, ¶ 18, 558 P.3d 1021, 1030 (quoting *Finnie*, 79 P.3d at 1261). At the same time, the CGIA enables parties injured by certain types of governmental conduct to obtain compensation for their injuries, subject to applicable limits. *See Flores v. Colo. Dep't of Corr.*, 3 P.3d 464, 465 (Colo. App. 1999).

¶ 23    Thus, sovereign immunity must yield "in an action for injuries resulting from certain tortious governmental conduct, including certain kinds of negligent acts or omissions by public entities or their employees." *Smokebrush Found. v. City of Colorado Springs*, 2018 CO 10, ¶ 20, 410 P.3d 1236, 1240. The CGIA "withdraws and restores [sovereign] immunity through a series of immunity waivers." *Bilderback v. McNabb*, 2020 COA 133, ¶ 7, 474 P.3d 247,

10

250 (quoting *Corsentino v. Cordova*, 4 P.3d 1082, 1086 (Colo. 2000)). One such waiver allows a plaintiff to recover damages from a public entity for injuries "resulting from" the "operation of a motor vehicle" by a "public employee while in the course of employment." § 24-10-106(1)(a). "'[R]esulting from' connotes only 'a minimal causal connection between the injuries and the specified conduct.'" *Hice v. Giron*, 2024 CO 9, ¶ 15, 543 P.3d 385, 391 (quoting *Tidwell v. City & County of Denver*, 83 P.3d 75, 86 (Colo. 2003)).

¶ 24    "Because the CGIA's grant of sovereign immunity is in derogation of Colorado common law, we narrowly construe any provision granting sovereign immunity." *Bilderback*, ¶ 7, 474 P.3d at 250. "As a corollary to that principle, we broadly construe any CGIA provision waiving sovereign immunity." *Id.*

¶ 25    "[W]hether the government is immune from suit is a jurisdictional question." *Grand Junction Peace Officers' Ass'n*, ¶ 19, 558 P.3d at 1030 (quoting *City & County of Denver v. Dennis*, 2018 CO 37, ¶ 9, 418 P.3d 489, 494). For this reason, when a public entity moves to dismiss CGIA claims, we resolve the court's jurisdiction under C.R.C.P. 12(b)(1)'s dismissal standard. *See Dozier*, ¶ 11, 570 P.3d at 486.

11

¶ 26    Sovereign immunity "must be dealt with at the earliest possible stage" because a sovereign "cannot be forced to trial if a jurisdictional prerequisite has not been met." *Dennis*, ¶ 10, 418 P.3d at 494 (quoting *Trinity*, 848 P.2d at 924).  The CGIA requires courts to "definitively resolve all issues of immunity before trial, . . . employ[ing] the [*Trinity*] procedures." *Finnie*, 79 P.3d at 1258.  And the court "must necessarily make factual findings to ensure that the court has jurisdiction to hear the case." *Dennis*, ¶ 10, 418 P.3d at 494.  Thus, courts conduct *Trinity* hearings "to develop facts relating to immunity issues." *Finnie*, 79 P.3d at 1260.  "The district court 'is authorized to make appropriate factual findings' and must rely on these facts in deciding, as a matter of law, whether it has jurisdiction to hear the case." *Dozier*, ¶ 12, 570 P.3d at 487 (quoting *Medina v. State*, 35 P.3d 443, 452 (Colo. 2001)).

¶ 27    In *Dozier*, the supreme court held that, "when disputed jurisdictional facts are inextricably intertwined with the merits, a plaintiff must demonstrate a likelihood of the existence of the facts necessary to establish a waiver of CGIA immunity." *Id.* at ¶ 2, 570 P.3d at 485.  The supreme court further explained that a court

should afford a plaintiff asserting a tort claim against a public entity reasonable inferences from the evidence:

> At the evidentiary hearing, a district court "may receive any competent evidence pertaining to" a factual attack on the jurisdictional allegations of the complaint. The court should afford the plaintiff the reasonable inferences from her undisputed evidence and, if the court finds that the plaintiff's allegations are true, it should also give the plaintiff the reasonable inferences from her *disputed* evidence.

*Id.* at ¶ 12, 570 P.3d at 486-87 (emphasis added) (citations omitted).

¶ 28    The supreme court then turned to the "plaintiff's burden to prove that a public entity waived immunity," *id.* at ¶ 18, 570 P.3d at 487, and decided that "when a public entity asserts CGIA immunity and the disputed jurisdictional facts are inextricably intertwined with the merits, the likelihood standard applies," *id.* at ¶ 24, 570 P.3d at 489. Under that standard, a court engages in "factfinding rather than merely making a ruling of law regarding sufficiency of the evidence to present a fact question." *Id.* at ¶ 21, 570 P.3d at 488 (quoting *Foster-Miller, Inc. v. Babcock & Wilcox Can.*, 46 F.3d 138, 146 (1st Cir. 1995)). The likelihood standard, which "is like

the first element of the preliminary injunction analysis," requires the plaintiff to "'show a likelihood,' or 'a reasonable probability[,] of success on the merits.'" *Id.* (quoting *Dallman,* 225 P.3d at 621).

### 3. The Likelihood Standard Applies to Scott's Claims

¶ 29    The Denver Defendants contend that the district court did not apply the correct legal standard in concluding that Scott marshaled sufficient evidence to establish that the Denver Defendants waived immunity under the CGIA. We agree.

¶ 30    In addition, the Denver Defendants contend that the district court "fail[ed] to make specific findings," but, rather, "infer[red] . . . facts in favor of [Scott]," and "implicitly found [Scott] did not meet his burden of proof to establish the disputed jurisdictional facts . . . . under an appropriate likelihood standard." For this reason, the Denver Defendants argue that Scott failed to prove a CGIA waiver and his claims must be dismissed under C.R.C.P. 12(b)(1) as a matter of law.

¶ 31    We first address whether the likelihood standard applies beyond the CGIA's dangerous condition exception analyzed in *Dozier.* After answering this question in the affirmative, we then

14

turn to whether we can determine from the record whether the evidence presented at the hearing established a "'likelihood,' or 'a reasonable probability[,] of success on the merits.'" *Id.* (quoting *Dallman*, 225 P.3d at 621).

¶ 32    We disagree with Scott's argument that *Dozier* is limited to dangerous condition cases and that, despite *Dozier*, the district court did not err by affording Scott reasonable inferences from the evidence presented at the *Trinity* hearing without applying the likelihood standard.

¶ 33    Scott contends that the supreme court cabined *Dozier*'s likelihood standard to the fourth factor of the dangerous condition test — whether the condition of a public building was proximately caused by the public entity's negligent maintenance. *See id.* at ¶¶ 15, 26, 570 P.3d at 487, 489. Scott reads *Dozier* too narrowly.

¶ 34    In *Dozier*, the plaintiff brought a tort action against Jefferson County after she slipped and fell on a puddle of water in the county courthouse. She alleged that, because the puddle constituted a dangerous condition of a public building, *see* § 24-10-106(1)(c), the county had waived CGIA immunity, *Dozier*, ¶ 1, 570 P.3d at 485. The county moved to dismiss the plaintiff's claims for lack of

subject matter jurisdiction under C.R.C.P. 12(b)(1), which the district court granted. *Id.*

¶ 35 The supreme court observed that the jurisdictional facts were inextricably intertwined with the merits of Dozier's claim. *Id.* at ¶ 18, 570 P.3d at 487. However, the court said that before it could "consider whether Dozier's injuries 'result[ed] from' a 'dangerous condition'" under section 24-10-106, she first had to "prove that the spill *was* a 'dangerous condition.'" *Id.* at ¶ 28, 570 P.3d at 489-90. Thus, while Dozier was not required to prove the county's negligence, she needed to prove the statutory elements of a "dangerous condition" — that "the allegedly dangerous condition existed because of the [c]ounty's negligent act or omission." *Id.* at ¶ 26, 570 P.3d at 489. Moreover, she needed to demonstrate "it was likely that the public entity's negligent act or omission proximately caused the allegedly dangerous condition." *Id.* at ¶ 32, 570 P.3d at 490. Because this determination was inextricably intertwined with the merits of the case, the court concluded that Dozier was required to prove these matters under a likelihood standard. *Id.* at ¶¶ 2, 21, 24, 570 P.3d at 485, 488-89.

16

¶ 36    Although the supreme court sought to "first clarify the burden the plaintiff must meet to prove that a public entity waived CGIA immunity" before applying the fourth factor of the dangerous condition test, it did not expressly or implicitly say that its holding was limited to such an application. *Id.* at ¶ 17, 570 P.3d at 487. Thus, the supreme court did not limit the application of the reasonable likelihood standard to the fourth factor of the dangerous condition test.

¶ 37    In light of our determination that the likelihood standard applies to "operation of a motor vehicle" CGIA cases, before the district court could determine whether Denver Water waived immunity, it needed to examine whether Scott satisfied his burden of proving, under the likelihood standard, that Williams was operating a motor vehicle, § 24-10-106(1)(a), and that Scott's injuries likely "result[ed] from" Williams's "operation of a motor vehicle." § 24-10-106(1)(a); *see Dozier*, ¶ 32, 570 P.3d at 490.

¶ 38    Not surprisingly, given that the supreme court announced *Dozier* after the district court denied the Denver Defendants' dismissal motion, the court did not apply *Dozier*'s likelihood standard. But Scott does not deny that *Dozier* applies to this case,

and amicus curiae the Colorado Trial Lawyers Association agrees that *Dozier*'s likelihood standard applies to Scott's claims.

¶ 39     Thus, the district court erred by not applying the likelihood standard when determining whether the Denver Defendants waived CGIA immunity.

### a.    Under the Facts of This Case, Williams's Act of Illegally Parking the Truck Constituted "Operation of a Motor Vehicle"

¶ 40     Before we examine whether, on this record, Scott established a likelihood of success on the merits, we consider whether the district court correctly concluded in its first alternative analysis that "the act of parking on the wrong side of the road, in the context of the facts of this case, is operation of the motor vehicle for purposes of waiver of immunity." We agree that, on these facts, Williams's act of parking illegally, without more, constituted "operation of a motor vehicle" under the CGIA.

¶ 41     "We review questions of statutory interpretation de novo." *Robinson v. Ignacio Sch. Dist.*, 2014 COA 45, ¶ 8, 328 P.3d 297, 299. "When reviewing issues of statutory construction, we must ascertain and effectuate the General Assembly's intent." *Id.* "To discern legislative intent, we first examine the plain language of the

18

statute, giving words and phrases effect according to their plain and ordinary meanings." *Id.*

¶ 42 The CGIA does not define "operation." *Id.* at ¶ 13, 328 P.3d at 299. But "divisions of this court have defined 'operation' as 'actions of the operator related to [the] physical control of the functions of the motor vehicle.'" *Id.* at ¶ 14, 328 P.3d at 299-300 (quoting *Harris v. Reg'l Transp. Dist.*, 15 P.3d 782, 784 (Colo. App. 2000)). "'[O]peration' is a 'broad term'" that encompasses actions of the public employee that are "'essential' or 'necessary'" to "the actions or omissions in driving the vehicle." *Young v. Jefferson Cnty. Sheriff*, 2012 COA 185, ¶¶ 11-12, 292 P.3d 1189, 1191 (first quoting *Harris*, 15 P.3d at 784; and then quoting *Stockwell v. Reg'l Transp. Dist.*, 946 P.2d 542, 544 (Colo. App. 1997)). In *Harris*, the court expanded the definition to include "both the physical defects of a motor vehicle and its movement, as well as other actions fairly incidental to those defects or movements." *Id.* at ¶ 12, 292 P.3d 1189, 1191 (quoting *Harris*, 15 P.3d at 784). However, "while waivers are to be construed broadly in favor of the victim, 'operation' does not extend to all tortious acts occurring on a public vehicle; rather, they are limited to a driver's physical control over

19

the function of a motor vehicle." *Robinson*, ¶ 20, 328 P.3d at 300. Thus, a public entity waives immunity under the "operation of a motor vehicle" provision for only those acts that "require a physical manifestation of operation of a motor vehicle." *Id.*

¶ 43    Williams's act of illegally parking the Denver Water truck while delivering water pitchers was a function of a motor vehicle over which Williams had physical control and that required a physical manifestation of the truck's operation.  Thus, as a matter of law, Williams's act of parking the truck illegally constituted "operation of a motor vehicle" under the CGIA.

¶ 44    The case law interpreting the "operation of a motor vehicle" exception supports our conclusion.

¶ 45    In *Johnson v. Regional Transportation District*, 916 P.2d 619, 622 (Colo. App. 1995), a division of this court concluded that the defendant, the Regional Transportation District (RTD), waived immunity when one of its bus drivers "stopp[ed] in a traffic lane and across the highway from the regular RTD stopping place." *Id.* at 620.  After disembarking from the bus, the plaintiff was struck by a car and injured when she crossed the highway to get to her car — an action she was only required to take because the driver did not

20

drop her off at the regular bus stop. *Id.* The plaintiff alleged that her injuries resulted from the driver's "operation" of the bus. *Id.* at 620-21. In determining that RTD waived immunity under the facts of *Johnson*, the division explained that "operation" is not restricted to a motor vehicle's "physical defects or movements" but includes "the stops such vehicles ordinarily make." *Id.* at 621.

¶ 46    In *Harris*, the division held that RTD waived immunity because its driver failed to clear snow and ice from the bus's steps, resulting in a passenger slipping and falling while exiting. *Harris*, 15 P.3d at 783, 785. The division said that "operation" refers to "actions of the operator related to physical control of the functions of the motor vehicle" and "movement of passengers into and out of a bus is a function of the bus controlled by the bus driver." *Id.* at 784.

¶ 47    The division concluded in *Young* that the Jefferson County Sheriff and one of its employees waived immunity because the employee, who was driving handcuffed passengers in a van, "fail[ed] to secure" them with seatbelts. *Young*, ¶ 13, 292 P.3d at 1192. The passengers were injured when they were "thrown about the van in [an] accident." *Id.* at ¶ 4, 292 P.3d at 1190. In holding that the defendants waived immunity, the division noted that the passengers

21

"were dependent on the van driver to secure them because they were handcuffed, which deprived them of access to the seatbelts," and, thus, securing them was "a function controlled by the van driver." *Id.* at ¶ 17, 292 P.3d at 1192. The division distinguished the facts in *Young* from those in *Stockwell*, in which the court held that the defendant, RTD, did not waive immunity for a bus passenger's claims arising from his attack by other passengers. In that case, the plaintiff-passenger alleged that the bus driver had a duty to provide adequate security measures. *Stockwell*, 946 P.2d at 543-44.

¶ 48    The division in *Young* explained that, in *Stockwell*, the division concluded that RTD did not waive immunity because the provision of adequate security measures was "not a function of the bus driver, but rather of a third party — the public transportation district" and that the passenger's injuries only "coincidentally occurred" on an RTD bus. *Young*, ¶¶ 20-21, 292 P.3d at 1193. In contrast, in *Young*, the plaintiff's injuries "allegedly arose as a result of the van driver's conduct within his control." *Id.* at ¶ 21, 292 P.3d at 1193.

¶ 49     In *Robinson,* a case with similar facts to those in *Young,* the division, following *Young,* held that the defendant school district had not waived immunity for claims arising from an attack on a child by other children while riding a school bus. *See Robinson,* ¶¶ 3, 27-28, 328 P.3d at 298, 301-02. The division explained that the child's injuries "did not stem from the bus driver's failure to perform a physical act" but, rather, from "third-party assaults by fellow passengers." *Id.* at ¶ 27, 328 P.3d at 301.

¶ 50     These cases confirm that, in this case, Williams's act of parking the truck illegally constituted the "operation of a motor vehicle." Like the act of dropping off the passenger in *Johnson,* Williams "ordinarily" parked his Denver Water truck while delivering pitchers as part of his job duties. *See Johnson,* 916 P.2d at 621. And like in *Young* and *Robinson,* the fact that Williams's truck was illegally double-parked, facing the wrong way on North Ogden Street, was a function of Williams's act as the driver and not that of a third party. *See Young,* ¶¶ 20-21, 292 P.3d at 1193; *Robinson,* ¶ 27, 328 P.3d at 301-02. Williams was the only party in control of deciding where and how to park the truck — and he chose to park it illegally, facing oncoming traffic. Scott's alleged

injuries did not "coincidentally occur[]" in connection with a public entity's vehicle. *Young*, ¶ 21, 292 P.3d at 1193. Rather, they "arose as a result" of where and how Williams parked his truck. *Id.*

¶ 51 Accordingly, we agree with the district court that, as a matter of law, "the act of parking on the wrong side of the road, in the context of the facts of this case, is operation of the motor vehicle for purposes of waiver of immunity" under the CGIA.

¶ 52 We note that our analysis is limited to the facts presented at the *Trinity* hearing on Scott's claims. We do not hold that the "operation of a motor vehicle" exception results in an immunity waiver whenever a public employee illegally parks the employer's vehicle. But under the facts of this case, parking the truck was "very much in the course of his operation of the vehicle, making the deliveries he was making."

¶ 53 As we discuss in Part II.A.3.b below, however, because the district court did not apply the correct legal standard, we cannot discern whether there was a minimal causal connection between William's act of illegally parking the truck and the accident. This issue will need to be resolved on remand, as we discuss in Part II.A.4 below.

24

### b. We Cannot Discern Whether the District Court Would Have Reached the Same Conclusion if It Had Applied the Likelihood Standard

¶ 54    We next turn to whether we can determine from the record whether Scott "'show[ed] a likelihood,' or 'a reasonable probability[,]' of success on the merits.'" *Dozier*, ¶ 21, 570 P.3d at 488 (quoting *Dallman*, 225 P.3d at 621).

¶ 55    In the district court's first alternative analysis, it found "a minimal causal connection between [Williams's] decision to park the vehicle in the northbound lane on Odgen [Street] and [the accident]." Unlike its second alternative analysis, however, the court did not cite any portion of Scott's testimony in its first alternative analysis. Instead, in that analysis, the court found a minimal causal connection solely based on its determination that Williams's illegal parking constituted "operation of a motor vehicle." However, whether Williams was operating a motor vehicle and whether there was a minimal causal connection between that operation and the accident involve two separate inquiries. The court needed to resolve both issues before it could determine whether the Denver Defendants were entitled to immunity under the CGIA. *See id.* at ¶¶ 28, 32, 570 P.3d at 489-90. Because the

court applied the incorrect legal standard, we cannot discern from the record whether the court still would have found such a causal link and denied the Denver Defendants' dismissal motion if it had applied the likelihood standard to its first alternative analysis.

¶ 56     The district court also found a minimal causal connection at the conclusion of its second alternative analysis. In that analysis, the court not only considered the location of the truck at the time of the accident, but it also noted Scott's testimony that he "saw the truck's flashers turn off, which led [Scott] to believe that [Williams] was going to start driving the wrong way towards [Scott] and into the lane in which [Scott] would have to be moving in order to avoid the truck," and that Scott took "evasive action" after he "saw the truck move forward." In neither analysis did the district court make findings on three disputed facts — whether, immediately before the accident, the truck's engine was running, its emergency flashers were turned off, and the truck moved.

¶ 57     In its second alternative analysis, the court found "a minimal causal connection between the truck being parked [on the wrong side of the street] and potentially the flashers going off or the truck moving forward or lurching forward. That's a minimal causal

26

connection to [Scott's] injuries." For the reasons explained above in our discussion of the court's first alternative analysis, we cannot determine from the record whether, had it applied *Dozier*'s likelihood standard in its second alternative analysis, the court would still have found a minimal causal connection between Williams's actions and the accident.

¶ 58  As an appellate court, it is not our role to reweigh the evidence when the district court made findings of fact and legal conclusions without applying the controlling legal standard. *See Owners Ins. Co. v. Dakota Station II Condo. Ass'n*, 2021 COA 114, ¶ 50, 499 P.3d 1069, 1080. We are ill-suited to make such findings based solely on a cold record because we did not observe the witnesses' demeanor when they testified, and we cannot assess their credibility. *See Moeller v. Colo. Real Est. Comm'n*, 759 P.2d 697, 702 (Colo. 1988).

### 4.    The Proper Remedy Is a Remand for Findings of Fact Under the Correct Standard

¶ 59  The Denver Defendants contend that, if we agree that the district court applied the wrong legal standard, we should reverse

its denial of the Denver Defendants' dismissal motion and remand with instructions to dismiss the case. We disagree.

¶ 60 For the reasons explained above, we cannot determine whether the district court would have reached the same conclusion regarding a minimal causal connection and the merits of the Denver Defendants' dismissal motion if it had applied the likelihood standard. Scott is entitled to a hearing at which the court considers the evidence through the correct legal lens and determines whether Scott demonstrated a likelihood of success on the merits. *See Dozier*, ¶ 24, 570 P.3d at 489. In any event, we offer no opinion, nor is it our role to weigh in, on whether Scott satisfied the likelihood standard or on the merits of his claims. *See Owners Ins. Co.*, ¶ 50, 499 P.3d at 1080; *Moeller*, 759 P.2d at 702.

B. The Denver Defendants' Request for Attorney Fees

¶ 61 The Denver Defendants request an award of their attorney fees under section 13-17-201, C.R.S. 2025. That statute requires a court to enter a judgment for reasonable attorney fees if an action is dismissed under C.R.C.P. 12(b). In light of our decision to remand the case for further proceedings under the likelihood standard, we deny the Denver Defendants' request for attorney fees.

## III.    Disposition

¶ 62    The district court's order denying the Denver Defendants' dismissal motion is reversed, and the case is remanded for findings of fact and conclusions of law consistent with *Dozier*'s likelihood standard.  Specifically, the court must determine whether Scott established a likelihood — or a "reasonable probability" — that there was a minimal causal connection between Williams's operation of the truck and the accident.  The court may, in its discretion, make those findings and conclusions based on the evidence presented at the March 2025 *Trinity* hearing, or it may conduct a new hearing.

JUDGE YUN and JUDGE SCHUTZ concur.